**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 08-cv-01687-REB-MEH

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

    Plaintiff,

v.

BARBARA FISHER,
LORRIE VASQUEZ, mother and next friend of Jeremy Vasquez (a/k/a Jeremy Vialpondo),
JEREMY VASQUEZ (a/k/a Jeremy Vialpondo), individually,
STACY MOORE, mother and next friend of Caleb Moore, and
CALEB MOORE, individually

    Defendants.

---

**ORDER**

---

**Blackburn, J.**

    The matters before me are (1) the **Vasquez/Vialpando [sic] and Moore Defendants' Motion for Partial Summary Judgment** [#5] filed September 4, 2008; (2) **Defendant Barbara Fisher's Motion for Partial Summary Judgment** [#31] filed December 15, 2008; (3) the **Vasquez/Vialpando [sic] and Moore Defendants' Motion for Rule 11 Sanctions** [#32] filed December 17, 2008; (4) defendants' **Motion to Strike Affidavit of John Grund** [#35] filed January 22, 2009; (5) the **Vasquez/Vialpando [sic] and Moore Defendants' Second Motion for Partial Summary Judgment** [#65] filed February 27, 2009; (6) the **Vialpando/Moore [sic] Motion for Judgment on the Pleadings** [#91] filed April 13, 2009; and (7) **Plaintiff State Farm's Fed.R.Civ.P. 56 Motion for Summary Judgment** [#120] filed May 20, 2009; and (8) plaintiff's **Motion**

**To Supplement Pleadings with James Johnson's Supplemental Report** [#148] filed June 26, 2009. I grant plaintiff's motion for summary judgment in part and deny it in part, and deny the remainder of the motions.

## I.  JURISDICTION

I have jurisdiction over this matter pursuant to 28 U.S.C. §1332 (diversity of citizenship).

## II.  STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. **Fed. R. Civ. P.** 56(c);[1] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it might reasonably affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Farthing*, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine fact issue. *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994), *cert. denied*, 115 S.Ct. 1315 (1995). By contrast, a movant who bears the burden of proof must submit evidence to establish every essential

---

[1] The standards for summary judgement sent forth in Fed.R.Civ.P. 56 are applicable in declaratory judgment actions. *United States v. Gammache*, 713 F.2d 588, 594 (10th Cir. 1983).

element of its claim or affirmative defense. **See In re Ribozyme Pharmaceuticals, Inc. Securities Litigation**, 209 F.Supp.2d 1106, 1111 (D. Colo. 2002). In either case, once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. **Concrete Works**, 36 F.3d at 1518. All the evidence must be viewed in the light most favorable to the party opposing the motion. **Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services**, 165 F.3d 1321, 1326 (10th Cir. 1999), **cert. denied**, 120 S.Ct. 53 (1999). However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence. **Rice v. United States**, 166 F.3d 1088, 1092 (10th Cir. 1999), **cert. denied**, 120 S.Ct. 334 (1999); **Nutting v. RAM Southwest, Inc.**, 106 F.Supp.2d 1121, 1123 (D. Colo. 2000).[2]

### III. ANALYSIS

#### A. FACTUAL BACKGROUND

On November 5, 2007, Jeremy Vialpondo, Caleb Moore, and Robert Ellsworth were passengers in a 1991 Ford Explorer driven by Michael Fisher, the son of defendant Barbara Fisher, in Colorado Springs, Colorado, when Vialpondo received a telephone call from Tiffany Howard. Howard explained that Andrew Brown, with whom she had recently ended a romantic relationship, was watching her house and asked

---

[2] The issues raised by and inherent to the motions for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motions stand submitted on the papers. *Cf.* **FED. R. CIV. P. 56(c)** and **(d)**. *Geear v. Boulder Cmty. Hosp.,* 844 F.2d 764, 766 (10th Cir.1988) (holding that hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties).

Vialpondo to come pick her up. Fisher drove to Howard's residence to do so.

Shortly after driving away from Howard's home, Fisher and his passengers became aware that Brown was following them in his car. After following Fisher's car for some two miles, Brown pulled up alongside and fired a shotgun at the car, striking and injuring Vialpondo. Flying glass also struck and injured Moore.

Fisher then pulled his vehicle to the side of the road and stopped. All the occupants of Fisher's car exited the vehicle, except Vialpondo. Fisher approached a third party in an attempt to obtain assistance. Brown, who had driven past Fisher's car after the shooting, turned his vehicle around, stopped, and got out of the car.[3] Brown shot and killed Fisher and then himself.

Fisher's 1991 Ford Explorer was insured by State Farm policy number 142 5836-D05-06.[4] Fisher and his mother, defendant Barbara Fisher, were named insureds under the policy, and the parties concede that Vialpondo and Caleb Moore were insureds under the terms of the policy. The policy provided for uninsured/underinsured motorist

---

[3] Defendants now assert that Brown did not exit his vehicle before shooting and killing Fisher. This assertion, which defendants support with a transcript excerpt of Caleb Moore's deposition testimony, directly contradicts the Final Pretrial Order, in which the parties stipulated to the fact that Brown "exited his vehicle" then "fired his shotgun at Mr. Fisher." (**Final Pretrial Order** ¶¶ 7-8 at 6 [#159], filed July 6, 2009.) "Unless the court modifies its pretrial order, the parties are bound by their admissions and stipulations included in the order and may not contradict its terms." *Air-Exec, Inc. v. Two Jacks, Inc.*, 584 F.2d 942, 944 (10th Cir. 1978) (citation omitted). Here, the parties have not moved to amend the Final Pretrial Order either to add the contention that Brown did not exit his vehicle or to remove the clearly stated assertion that he did so. Accordingly, I accept and consider only the stipulated allegation that Brown, indeed, "exited his vehicle."

[4] Brown himself was insured under an automotive liability insurance policy covering his vehicle. However, citing an intentional acts exclusion from coverage, the insurer declined to defend or indemnify for any claims asserted by any of the defendants. Accordingly, for the purposes of the case at bar, Brown's vehicle was uninsured. *See State Farm Mutual Insurance Co. v. McMillan*, 925 P.2d 785, 788 (Colo. 1996). In addition, defendants sought and obtained payment from Brown's parents' homeowners insurance to the full $300,000 limit of that policy.

coverage in the amounts of $250,000 per person or $500,000 per occurrence. Specifically, the policy provided, in relevant part:

> We will pay compensation for damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be:
>
> 1. sustained by an insured; and
>
> 2. caused by an accident[5] that involves the operation, maintenance, or use of an uninsured motor vehicle as a motor vehicle.

Vialpondo and his mother and next friend, defendant Lorrie Vasquez, and Moore and his mother and next friend, defendant Stacy Moore, submitted claims to plaintiff, seeking payment of uninsured motorist benefits for the injuries Vialpondo and Caleb Moore sustained as a result of Brown's conduct. Barbara Fisher, as heir of Michael Fisher, also submitted a claim for uninsured motorist benefits for her son's wrongful death.

Plaintiff responded with letters reserving rights and filed this lawsuit seeking declaratory judgments as to whether the injuries Vialpondo, Caleb Moore, and Michael Fisher sustained were caused by the operation, maintenance, or use of an uninsured

---

[5] The threshold question whether the injuries underlying the case at bar were caused by an accident involving the operation, maintenance, or use of a vehicle is not before me. I assume, without deciding, that they were. Where, as here, the term "accident" is undefined in an insurance policy for uninsured motorist coverage, the standpoint of the insured guides determination whether injury resulted from an accident. **McMillan**, 925 P.2d at 793. A reasonable person in Michael Fisher's position would not have contemplated that merely picking up a friend in his car would lead to the tragic events that unfolded here. *See Farmers Alliance Mutual Insurance Co. v. Cutrone*, 448 F.Supp.2d 1226, 1230 (D. Colo. 2006).

motor vehicle.[6]  Defendants filed counterclaims for breach of contract and bad faith, based on plaintiff's allegedly unreasonable denial or delay of payment of benefits.  The instant motions ensued and are now ripe for determination.

## B.  COLORADO LAW

### 1.  INTERPRETATION OF INSURANCE CONTRACTS

Because I exercise diversity jurisdiction in this case, I apply the substantive law of Colorado as to interpretation of the insurance policy at issue in this case.  **See Gasperini v. Center for Humanities, Inc.**, 518 U.S. 415, 426-27, 116 S.Ct. 2211, 2219,135 L.Ed.2d 659 (1996).  In Colorado, insurance policies are construed using the same traditional principles of interpretation that apply to construction of contracts generally.  **Compass Insurance Co. v. City of Littleton**, 984 P.2d 606, 613 (Colo. 1999).  Thus, unambiguous terms are interpreted in accordance with their plain and ordinary meanings and as a person of ordinary intelligence would understand them.  **MarkWest Hydrocarbon, Inc. v. Liberty Mutual Insurance Co.**, 558 F.3d 1184, 1190 (10th Cir. 2009).  Insurance policy terms are ambiguous only if they are subject to more than one reasonable interpretation.  **Allstate Insurance Co. v. Juniel**, 931 P.2d 511, 513 (Colo. App. 1996).  Truly ambiguous terms are construed against the insurer and in a manner that would promote, rather than deny, coverage.  **Blackhawk-Central City**

---

[6] Plaintiff also originally sought a declaration that Barbara Fisher could not "stack" the coverages of the Explorer policy and a separate State Farm automobile insurance policy covering her 2007 Jeep Liberty.  (**See Complaint and Request for Declaratory Relief** ¶¶ 23-28 at 5-6 [#1], filed August 8, 2008.)  However, that claim was not brought forward in the Final Pretrial Order.  (**See Final Pretrial Order** ¶ 3.A. at 2 [#159], filed July 6, 2009) (setting forth plaintiff's claims as encompassing "a declaration with respect to whether Defendants injuries arose out of the 'operation, maintenance, or use of an uninsured motor vehicle as a motor vehicle,' as required for coverage under the insurance policies").  That claim accordingly has been waived.  **Wilson v. Muckala**, 303 F.3d 1207, 1215 (10th Cir. 2002).

*Sanitation District v. American Guarantee & Liability Insurance Co.*, 214 F.3d 1183, 1191 (10th Cir. 2000).

There are two important provisos to these general principles of insurance contract interpretation. *Farmers Alliance Mutual Insurance Co. v. Cutrone*, 448 F.Supp.2d 1226, 1229 (D. Colo. 2006). First, an insurance policy creates a "quasi-fiduciary" duty that imposes on insurers a responsibility not to unreasonably withhold or delay payment of benefits. *State Farm Mutual Automobile Insurance Co. v. Kastner*, 77 P.3d 1256, 1259-60 (Colo. 2003). Second, all insurance policies must comply with the Colorado uninsured motorist statute, which requires all insurers to provide coverage for injuries arising out of the use of an uninsured motor vehicle unless an insured expressly rejects such coverage in writing. *See* §10-4-609(1)(a), C.R.S. *See also Cutrone*, 448 F.Supp.2d at 1229 (noting that the statute intended to "provide compensation for injury caused by an uninsured motorist equal to that obtainable for injury caused by an insured motorist.") (citations and internal quotation marks omitted).

## 2. UNINSURED MOTORIST COVERAGE

Two Colorado Supreme Court cases, *State Farm Mutual Automobile Insurance Co. v. McMillan*, 925 P.2d 785 (Colo. 1996), and *Cung La v. State Farm Mutual Automobile Insurance Co.*, 830 P.2d 1007 (Colo. 1992), figure prominently in the parties' arguments. These cases have an interconnected and somewhat complicated history. Because of their centrality to the arguments raised in several of the instant motions, additional explication is warranted before proceeding to substantive analysis of the claims.

The plaintiff in ***Cung La*** was driving along an interstate highway when three other cars boxed him in. The drivers of the three vehicles recognized the plaintiff's vehicle from a previous altercation and purposefully targeted him. The drivers maneuvered their vehicles in front of, behind, and to the left of the plaintiff's vehicle, thereby limiting his ability to control his speed or direction. The driver to the left then fired a shot at the plaintiff's vehicle, injuring him. The plaintiff sought, *inter alia*, payment of claims for uninsured motorist insurance benefits. Just as in the instant case, the insurer sought a declaratory judgment as to whether the plaintiff's injuries resulted from the use of an uninsured motor vehicle so as to trigger insurance coverage. The insurer moved for summary judgment, which the trial court granted. ***See Cung La***, 830 P.2d at 1008.

The insured in ***McMillan*** was involved in an altercation with another driver, who then followed her vehicle closely and flashed his high-beams at her. When the two vehicles stopped alongside each other at a traffic light, the drivers had a heated verbal exchange. After the light turned green, the second driver chased the insured's vehicle and fired several shots at it, injuring the insured. The insurer filed a complaint seeking a declaratory judgment that the insured's injuries did not result from the use of an uninsured motor vehicle and sought summary judgment. The parties in ***McMillan*** stipulated that the then-pending appellate decision in ***Cung La*** would control the outcome of the insurer's summary judgment motion in their case as well. ***See McMillian***, 925 P.2d at 787.

The Colorado Court of Appeals found in favor of the insurer in ***Cung La*** and affirmed the decision of the lower court granting summary judgment. ***State Farm***

8

*Mutual Automobile Insurance Co. v. Cung La*, 819 P.2d 537, 540 (Colo.App. 1991). Based on that decision, the *McMillan* court granted summary judgment to the insurer. *See McMillan*, 925 P.2d at 788. The Colorado Supreme Court, however, reversed the grant of summary judgment to the insurer in *Cung La* and remanded the case for further proceedings. *Cung La v. State Farm Mutual Automobile Insurance Co.*, 830 P.2d 1007, 1012-13 (Colo. 1992).

In light of this change of events, the insured in *McMillan* filed a motion for relief from judgment under Fed.R.Civ.P. 60, which the trial court granted. *See McMillan*, 925 P.2d at 789. The insurer then amended its complaint to add a claim that the insured's injuries did not arise out of an accident within the terms of the relevant insurance policy, and the parties filed motions for summary judgment. *See id.* The trial court ultimately set aside its prior judgment in favor of the insurer as to its use claim and found in favor of the insured on the new accident claim. The Colorado Court of Appeals agreed. *State Farm Mutual Automobile Insurance Co. v. McMillan*, 900 P.2d 1243, 1245-48 (Colo.App. 1994). On appeal, the Colorado Supreme Court upheld the grant of relief under Rule 60 and found that the shooting that led to the injuries underlying the case was indeed an "accident." *McMillan*, 925 P.2d at 795.

The Vialpondo/Vasquez and Moore defendants evidently believe that *Cung La* stands for the proposition that shootings between vehicles necessarily involve the use of a motor vehicle so as to automatically trigger coverage, and further that *McMillan* cements this proposition. They are plainly mistaken. There is no such *per se* rule under Colorado law. Insofar as the issue of use was concerned, *Cung La* held merely

that the plaintiff had raised an issue of fact as to whether the shooting in that case involved the use of a vehicle.[7]  **See Cung La**, 830 P.2d at 1011.  As for **McMillan**, it held only that a vehicle-to-vehicle shooting was an accident for purposes of interpreting an insurance policy.  **See McMillan**, 925 P.2d at 795.  With these matters settled, I turn to the motions before me.

## C.  CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiff seeks a declaratory determination that defendants are not entitled to coverage because the injuries sustained in the accident did not involve the use of an uninsured motor vehicle and because none of the defendants can establish adequate causation.  Defendants seek declaratory determinations to the contrary.[8]

The Colorado Supreme Court has articulated a two-prong test to guide courts' determination whether an incident arises out of the use of an uninsured motor vehicle. **Kastner**, 77 P.3d at 1261-62.  First, the use of the vehicle must be found to be "foreseeably indentifiable with the inherent purpose of a motor vehicle" at the time of the accident.  **Id.** at 1263.  This determination is driven by an inquiry of "the factual circumstances in each case, including the particular characteristics of the vehicle." **Cutrone**, 448 F.Supp.2d at 1230 (**quoting Aetna Casualty & Surety Co. v. McMichael**, 906 P.2d 92, 102 (Colo. 1995)) (internal quotation marks omitted).

---

[7]  The Vialpondo/Vasquez and Moore defendants have pointed me to no definitive case that stands for their proffered position, and I decline their implicit invitation to find such a case for them.

[8]  Although the Final Pretrial Order, the policy, and the Colorado uninsured motorist statute all reference injuries involving "the operation, maintenance, or use of an uninsured motor vehicle," with the exception of one isolated reference to "operation" in a reply brief, the parties only brief the issue of whether use of a vehicle is sufficient to trigger coverage.  I, therefore, address only that issue.

Second, if use is found, there must be a "causal nexus" between the use of the uninsured automobile and the injury. *Kastner*, 77 P.3d at 1263. This step requires more than mere "but for" causation, but less than "proximate cause in the tort sense." *Cutrone*, 448 F.Supp.2d at 1233 (citations omitted). For coverage to apply, there must be "an unbroken causal chain" between the use and the injury. *Kastner*, 77 P.3d at 1264. More specifically, a claimant "must demonstrate that the 'use' of the vehicle and the injury are directly related or inextricably linked so that no independent significant act or non-use of the vehicle interrupted the 'but-for' causal chain between the covered use of the vehicle and the injury." *Cutrone*, 448 F.Supp.2d at 1232-33; *see also McMichael*, 906 P.2d at 103 (requiring claimant to show that use of the vehicle was "integrally related to the claimant's activities and the injury at the time of the accident").

Plaintiff argues that defendants cannot satisfy the second prong of this test. Because they present distinct factual circumstances that are determinative of the ultimate issues in this case, I examine the Vialpondo/Vasquez and Moore defendants' claims separately from those of Barbara Fisher.

### 1. VIALPONDO/VASQUEZ AND MOORE DEFENDANTS

First, as to use of the uninsured vehicle, the parties agree that Brown and Michael Fisher were both driving along a road – that is, using their vehicles as a method of transportation – at the time Brown discharged his weapon at the car, thereby injuring Vialpondo and Caleb Moore. "[A]bsent some plain and obvious special purpose, the normal use of the ordinary passenger car is limited to transportation." *Kastner*, 77 P.3d at 1263. Nothing in the record or the parties' arguments indicates that Brown's vehicle

had any special use or was anything other than an ordinary passenger vehicle being used for transportation at the moment he fired on Michael Fisher's car. Accordingly, I find that the use prong is satisfied with regard to the claims of the Vialpondo/Vasquez and Moore defendants.

Plaintiff nevertheless argues that defendants cannot satisfy the heightened "causal nexus" requirement. In support of its position, plaintiff puts great emphasis on the fact that the assailants in *Cung La* maneuvered their vehicles around the victim's vehicle so as to restrict his movement and control his rate of speed. *Cung La*, 830 P.2d at 1011. Plaintiff extrapolates that because Brown did not use his vehicle in a similar manner to control or restrict Michael Fisher's vehicle – or rather, in some way beyond a mere method of transportation to the *situs* of the shooting and as a *locus* from which to shoot – there is no causal nexus between Brown's use of his vehicle and the injuries sustained by Vialpondo and Caleb Moore.

Plaintiff's focus is misplaced. The relevant inquiry regarding the causal nexus between the use of a vehicle and the injuries sustained is whether the assailant took some action "to disassociate his intentional tort from his otherwise normal use of the vehicle" or, more simply, whether the "actions of driving and shooting were inextricably linked."[9] *State Farm Mutual Automobile Insurance Co. v. Blystra*, 86 F.3d 1007, 1012-13 (10th Cir. 1996) (interpreting New Mexico law; citations omitted). In this case, as to these defendants, I find genuine issues of material fact exist as to whether such a

---

[9] In uninsured motorist insurance coverage cases such as these, an intentional tort, on its own, is not sufficient to break the causal link between an assailant's use of his vehicle and the victim's injuries. *Blystra*, 86 F.3d at 1013; *see also Cung La*, 830 P.2d at 1011 ("Here, the fact that the firearm contributed to the injuries does not preclude the requisite causal connection.").

disassociative act occurred.  It is undisputed that Brown used his vehicle to pull up alongside Michael Fisher's vehicle while both were traveling along the road.[10]  It is also undisputed that the vehicles were still in motion when Brown fired his weapon at Michael Fisher's vehicle and injured Vialpondo and Caleb Moore.[11]  Based on these facts, a reasonable jury could conclude that Brown's driving and shooting were sufficiently linked so as not to break the causal chain between use of the car for its ordinary intended purposes and Vialpondo's and Caleb Moore's injuries.  Therefore, plaintiff's motion for summary judgment as to the claims of the Vialpondo/Vasquez and Moore defendants for uninsured motorists benefits must be denied.

In their cross-motion for summary judgment, the Vialpondo/Vasquez and Moore defendants ignore the relevant two-prong inquiry and, instead, rely on their misinterpretations of **McMillan** and **Cung La** (*see supra* § B.2.), to argue that they are entitled to coverage.  As set forth above, **McMillan** and **Cung La** do not stand for the proposition that merely being the victim of a vehicle-to-vehicle shooting *ipso facto* entitles an injured party to uninsured motorist coverage.  Accordingly, defendants' cross-motion for partial summary judgment must be denied.

### 2.  BARBARA FISHER

---

[10] It could be said that Brown used his vehicle as an "active accessory" to maneuver into position to shoot at Michael Fisher's vehicle.  **Cung La**, 830 P.2d at 1009.  **See also Wassau Underwriters Insurance Co. v. Howser**, 422 S.E.2d 106, 108 (S.C. 1992) (finding  because "[o]nly through the use of his vehicle was the assailable able to closely pursue [the victim], thereby enabling him to carry out the pistol assault").

[11] The parties do not address whether "but-for" causation exists between Brown's use of his vehicle and the injuries Vialpondo and Caleb Moore suffered.  However, given that this case involves an automobile chase culminating in a shooting between the automobiles, a reasonable jury could find that "but for" Brown's use of an automobile, he would not have been able catch up to and fire on the car, thereby, injuring Vialpondo and Caleb Moore.

Plaintiff argues also it is entitled to summary judgment because its uninsured motorist coverage does not apply because Barbara Fisher cannot establish that Michael Fisher's injury arose out of the use of an uninsured motor vehicle or, if she can, she cannot also establish the requisite causal link between the use and the injury to Michael Fisher. Barbara Fisher argues she is entitled to summary judgment to the contrary, reasoning that the pursuit of the car, shooting at the car, and subsequent shooting of Michael Fisher were all part of one ongoing assault that arose out of the use of Brown's vehicle, so as maintain a concatenated causal connection between the use of the automobile and all the injuries inflicted by Brown.

The parties have stipulated that Brown shot Michael Fisher after both had alighted from their respective vehicles. (***See supra***, footnote 3.) Thus, at the time of the injury, neither Brown's nor Michael Fisher's car was being used as a method of transportation. ***Kastner***, 77 P.3d at 1263. As previously noted, nothing in the record or the parties' briefs suggests any alternative purpose or characterization for Brown's vehicle. With regard to Michael Fisher's injuries, therefore, Brown used his vehicle merely a method of transport to the *situs* of the accident, not as an active accessory to his actions in causing those injuries. ***Id.***; ***see also Blystra***, 86 F.3d at 1013 (holding that "if the assailant stops his vehicle and commits the tort after leaving the vehicle," the vehicle "is not an active accessory to the resulting injuries"). The critical causal link between use of the vehicle and the injury as to which recovery is sought was thereby severed.

Because Michael Fisher's injuries were not caused by the use of a motor vehicle,

14

as that term of the insurance contract is understood and interpreted under Colorado law, plaintiff is not liable to provide uninsured motorist benefits related to Michael Fisher's injuries. Accordingly, plaintiff's motion for summary judgment as to this claim must be granted and Barbara Fisher's cross-motion denied.

### 3. DEFENDANTS' COUNTERCLAIMS

Plaintiff seeks summary judgment as to all defendants' counterclaims for statutory bad faith, as well as with respect to the Vialpondo/Vasquez and Moore defendants' purported claim for common law bad faith breach of contract.[12] Under Colorado law, "an insurer's delay or denial was unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action." §10-3-1115, C.R.S. Claims for common law bad faith breach of contract also require proof of unreasonable denial or delay in payment of a claim, with the added requirement that the insurer knew or recklessly disregarded the unreasonableness of its actions. *Dale v. Guaranty National Insurance Co.*, 948 P.2d 545, 551 (Colo. 1997). Thus, my analysis of the counterclaims hinges on whether "a reasonable insurer . . . would have denied or delayed payment of the claim under the facts and circumstances" of the instant case. *TAF, L.L.C. v. Hartford Fire Insurance Co.*, 549 F.Supp.2d 1282, 1289 (D. Colo. 2008) (citation and internal quotation marks omitted).

The intricacies of my analysis in this case demonstrate clearly that the issue of

---

[12] The Vialpondo/Vasquez and Moore defendants' cross-motion for summary judgment on their counterclaim appears to be based entirely on their mistaken contention that *Cung La* and *McMillan* definitively establish their right to recover under the policy and that plaintiff, therefore, breached its duty of good faith by arguing otherwise. As noted above, defendants misapprehend the import of these precedents, which establish no such automatic entitlement to recovery.

15

whether Brown's use of his vehicle was sufficient to trigger coverage for defendants' various injuries was fairly debatable. Thus, plaintiff can not be said to have acted unreasonably or in bad faith in seeking a judicial determination of this complex and fact-intensive issue. *See Brennan v. Farmers Alliance Mutual Insurance Co.*, 961 P.2d 550, 557 (Colo. App. 1998). Accordingly, summary judgment as to defendants' counterclaims is appropriate.

### D.  OTHER MOTIONS

### 1.  MOTION FOR JUDGMENT ON THE PLEADINGS

The Vialpondo/Vasquez and Moore defendants further seek judgment on the pleadings pursuant to Fed. R. Civ. P 12(c), claiming that in light of the Colorado Supreme Court's holding in *McMillan*, plaintiff is collaterally estopped from arguing that there was no use of an uninsured motor vehicle in the instant case. Collateral estoppel – which, unlike *res judicata*, may be used offensively – prevents a party from relitigating an issue of fact or law that was necessary to a prior judgment in a subsequent suit on a different cause of action involving the same parties. *City and County of Denver v. Block 173 Associates*, 814 P.2d 824, 830 (Colo. 1991). Application of the doctrine requires, *inter alia*, that " [t]he issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding." *Bebo Construction Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 84-85 (Colo. 1999).

Defendants cannot satisfy this essential element. The issue they contend is precluded – that is, the use of a motor vehicle necessary to trigger insurance coverage – is not, in fact, identical to the issue litigated in *McMillan*. As previously noted, the

*McMillan* court only decided "whether damages sustained from a gunshot wound, which occurred during an altercation while driving on public streets, constitutes an injury 'caused by an accident.'" Concerning the question of use, however, the court only determined that the trial court's decision to grant the insured's Rule 60 motion was appropriate given the outcome of the proceedings in *Cung La*. *McMillan*, 925 P.2d at 792. The analyses of what constitutes an accident and the procedural propriety of granting relief from judgment are clearly not identical to the analysis of what constitutes use of a motor vehicle. Accordingly, collateral estoppel based on *McMillan* is not appropriate in this case.

Moreover, to the extent the Vialpondo/Vasquez and Moore defendants rely on *McMillan* to bootstrap *Cung La* for purposes of collateral estoppel, my decision is the same. Despite defendants' arguments to the contrary, *Cung La* does not definitively establish what constitutes use of a motor vehicle requisite to trigger uninsured motorist coverage. Rather, the Colorado Supreme Court merely found that the particular circumstances of that case raised material questions of fact sufficient to defeat summary judgment regarding the issue of use. *Cung La*, 830 P.2d 1011. Thus, the issue in *Cung La* (whether summary judgment was appropriate) is distinct from the issue as to which defendants seek preclusion – whether a shooting between two motor vehicles is sufficient to trigger uninsured motorist coverage.

Accordingly, the motion for judgment on the pleadings must be denied.

## 2.  MOTION FOR RULE 11 SANCTIONS

The Vialpondo/Vasquez and Moore defendants also seek Rule 11 sanctions against plaintiff's counsel, arguing that given the holdings in *McMillan* and *Cung La*, plaintiff's position in this lawsuit was legally unsupportable[13]  *See* FED. R. CIV. P. 11(b)(2) (requiring certification of counsel that any "claims, defenses and other legal contentions are warranted by existing law or by a nonfrivolous argument to extending, modifying or reversing existing law or for establishing new law").  Again, defendants' misapprehension of the holdings and purview of these precedents dooms their motion.  As noted several times, *McMillan* does not address the same issues as those that underlie this case, and *Cung La* is factually and procedurally distinct.  Moreover, the case law applying these precedents underscores the highly individualized nature of this ilk of cases and the importance of inquiry into the totality of the circumstances to determine coverage.  *See, e.g.*, *Kastner*, 77 P.3d at 1264-65; *Cutrone*, 448 F.Supp.2d at 1230.  Rule 11 sanctions clearly are not warranted.[14]

---

[13]  The Vialpondo/Vasquez and Moore defendants contend further that plaintiff's counsel has admitted that uninsured motorist coverage applies in vehicle-to-vehicle shooting incidents in *Williams v. Sate Farm Mutual Automobile Insurance Co*, a case currently before the Colorado Court of Appeals.  Defendants do not set forth any particular statement that allegedly constituted plaintiff's "admission," nor do they point to any brief, document, or other evidence in the case docket to support their argument.  I am neither required nor inclined to scour the record in search of evidence to substantiate defendants' allegations.  *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs [or case files].").

[14]  As I did not consider the affidavit attached to plaintiff's response to the Rule 11 motion, I deny the Vialpondo/Vasquez and Moore defendants' motion to strike it as moot.  Likewise, I deny plaintiff's motion to supplement its response with an additional affidavit as moot.

**THEREFORE, IT IS ORDERED** as follows:

1. That **Plaintiff State Farm's Fed.R.Civ.P. 56 Motion for Summary Judgment** [#120] filed May 20, 2009, is **GRANTED IN PART** and **DENIED IN PART**:

   a. That the motion is **GRANTED** as to plaintiff's claim for declaratory judgment against Barbara Fisher regarding whether Michael Fisher's injuries were caused by use of a motor vehicle, and that claim is **DISMISSED WITH PREJUDICE**;

   b. That the motion is **GRANTED** also with respect to defendants' counterclaims for bad faith, both statutory and common law, as well as with respect to the Vialpondo/Vasquez and Moore defendants' counterclaim for bad faith breach of contract, and those claims are **DISMISSED WITH PREJUDICE**;

   c. That the motion is **DENIED** with respect to plaintiff's claim for declaratory judgment as against the Vialpondo/Vasquez and Moore defendants regarding whether Vialpondo and Caleb Moore's injuries were cause by the use of a motor vehicle; and

   d. That the motion is **DENIED** as to plaintiff's second claim concerning stacking of coverages;

2. That the **Vasquez/Vialpando [sic] and Moore Defendants' Motion for Partial Summary Judgment** [#5] filed September 4, 2008, is **DENIED**;

3. That the **Vasquez/Vialpando [sic] and Moore Defendants' Second Motion for Partial Summary Judgment** [#65] filed February 27, 2009, is **DENIED**;

4. That **Defendant Barbara Fisher's Motion for Partial Summary Judgment** [#31] filed December 15, 2008, is **DENIED**;

5. That the **Vialpando/Moore [sic] Motion for Judgment on the Pleadings** [#91] filed April 13, 2009, is **DENIED**;

6. That the **Vasquez/Vialpando [sic] and Moore Defendants' Motion for Rule 11 Sanctions** [#32] filed December 17, 2008, is **DENIED**;

7. That the **Motion To Strike Affidavit of John Grund** [#35] filed January 22, 2009 is **DENIED AS MOOT**; and

8. That plaintiff's **Motion To Supplement Pleadings with James Johnson's Supplemental Report** [#148] filed June 26, 2009, is **DENIED AS MOOT**.

Dated August 27, 2009, at Denver, Colorado.

**BY THE COURT:**

Bob Blackburn
Robert E. Blackburn
United States District Judge